ORIGINAL

1   MICHAEL P. VERNA (CA BAR #84070)
    STEVEN P. MCFARLANE (CA BAR #240488)
2   BOWLES & VERNA LLP
    2121 N. California Boulevard, Suite 875
3   Walnut Creek, California 94596
    Telephone: (925) 935-3300
4   Facsimile: (925) 935-0371
    Email: mverna@bowlesverna.com

5   JAMES HEALY-PRATT
    Stewarts Law, LLP
6   5 New Street Square
    London EC4A 3BF
7   United Kingdom
    Telephone: +44 (0) 20 7822 8000
8   Email: jhp@stewartslaw.com
    (admitted to bar of New York;
9   *pro hac vice* application pending)

10  Attorneys for Plaintiffs

E-filing

11              UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

                SAN FRANCISCO DIVISION

13  MARGITA GERGELOVA and VIKTOR          CIVIL CASE NO.:
    GERGEL, individually, as successors-in-
14  interest to ARNOLD GERGEL, deceased, and   CV 09       5020
    as co-Personal Representatives of the Estate of
15  ARNOLD GERGEL; ALIA FAROUKH
    individually, as legal guardian for KARIM      COMPLAINT FOR DAMAGES
16  WARDE KHALIFEH and MOHAMAD ALI
    KHALIFEH, as successor-in-interest to          DEMAND FOR JURY TRIAL
17  HUSSEIN MOUNIR KHALIFEH, deceased
    and as Personal Representative of the Estate of
18  HUSSEIN MOUNIR KHALIFEH; CAMILLE
    LACOME, individually, as legal guardian for
19  ZOURI SALEMKOUR LACOME, as
    successor-in-interest to SAMIR SALEMKOUR,
20  deceased and as Personal Representative of the
    Estate of SALEMKOUR LACOME;
21  MATTHIEU ARRONDO, individually, as
    successor-in-interest to CATHERINE
22  ARRONDO TAKVORIA, deceased and as
    Personal Representative of the Estate of
23  CATHERINE ARROUNDO TAKVORIA;
    CHANTAL KOEHLER, individually, as
24  successor-in-interest to AUDREY QUESADA,
    deceased, SANA ZERELLI, deceased, and
25  JASSIM ZERELLI, deceased and as Personal
    Representative of the Estates of AUDREY
26  QUESADA, SANA ZERELLI, AND JASSIM
    ZERELLI; and GUY WARRIOR, individually,
27  as successor-in-interest to NEIL WARRIOR,
    deceased and as Personal Representative of the
28  Estate of NEIL WARRIOR;

                    Plaintiffs,

vs.

AIRBUS S.A.S.; AIRBUS AMERICAS, INC.;
HONEYWELL INTERNATIONAL; THALES
GROUP; THALES U.S.A., INC.;
MOTOROLA, INC.; INTEL CO.;
ROCKWELL COLLINS CO.; HAMILTON
SUNDSTRAND CORP.; GENERAL
ELECTRIC CO.; GE AVIATION SYSTEMS,
LLC; GOODRICH CORP.; DUPONT CO.;
JUDD WIRE CO.; and RAYCHEM CO.;

       Defendants.

Plaintiffs MARGITA GERGELOVA and VIKTOR GERGEL, individually and as

successors-in-interest to ARNOLD GERGEL, deceased, and as co-Personal Representatives of

the Estate of ARNOLD GERGEL; ALIA FAROUKH individually, as legal guardian for

KARIM WARDE KHALIFEH and MOHAMAD ALI KHALIFEH, and as successor-in-interest

to HUSSEIN MOUNIR KHALIFEH, deceased and as Personal Representative of the Estate of

HUSSEIN MOUNIR KHALIFEH; CAMILLE LACOME, individually, as legal guardian for

ZOURI SALEMKOUR LACOME, and as successor-in-interest to SAMIR SALEMKOUR,

deceased and as Personal Representative of the Estate of SAMIR SALEMKOUR; MATTHIEU

ARRONDO, individually and as successor-in-interest to CATHERINE ARRONDO

TAKVORIA, deceased and as Personal Representative of the Estate of CATHERINE

ARRONDO TAKVORIA; CHANTAL KOEHLER, individually and as successor-in-interest to

AUDREY QUESADA, deceased, SANA ZERELLI, deceased, and JASSIM ZERELLI,

deceased and as Personal Representative of the Estates of AUDREY QUESADA, SANA

ZERELLI, and JASSIM ZERELLI; and GUY WARRIOR, individually and as successor-in-

interest to NEIL WARRIOR, deceased and as Personal Representative of the Estate of NEIL

WARRIOR; through their undersigned attorneys, allege as follows:

## JURISDICTION

1.    This Court has jurisdiction over the subject matter of this case pursuant to 28

U.S.C. 1332 based on diversity of the parties and that the amount in controversy exceeds

$75,000; as well as multi-party multi-forum jurisdiction under 28 U.S.C. 1369, in that it

1 | involves at least minimal diversity between adverse parties and a single accident in a location

2 | other than the state where a defendant resides where at least seventy-five persons died.

3 | **INTRADISTRICT ASSIGNMENT**

4 | 2. Venue in the Northern District of California, San Francisco Division, is proper

5 | pursuant to 28 U.S.C. 1398(a) and Local Rule 3-2, because a substantial part of the events and

6 | omissions giving rise to the claims alleged herein occurred in this district.

7 | **PARTIES**

8 | 3. Plaintiffs are the heirs and successors-in-interest to individuals who died when

9 | Air France Flight 447 from Rio de Janeiro to Paris crashed into the Atlantic Ocean on or about

10 | June 1, 2009, killing all on board.

11 | 4. Plaintiffs MARGITA GERGELOVA and VIKTOR GERGEL are Hungarian

12 | nationals, and are the successors-in-interest to their minor child ARNOLD GERGEL and co-

13 | Personal Representatives of his Estate, who died on board Air France Flight 447.

14 | 5. Plaintiff ALIA FAROUKH is a Lebanese national, and is the successor-in-interest

15 | to her husband HUSSEIN MOUNIR KHALIFEH, and Personal Representative of his Estate,

16 | who died on board Air France Flight 447. Plaintiff ALIA FAROUKH is also the mother and

17 | legal guardian for KARIM WARDE KHALIFEH and MOHAMAD ALI KHALIFEH,

18 | Lebanese nationals and the surviving minor children of HUSSEIN MOUNIR KHALIFEH,

19 | deceased.

20 | 6. Plaintiff CAMILLE LACOME is a French national, and is the successor-in-

21 | interest to her partner SAMIR SALEMKOUR and Personal Representative of his Estate, who

22 | died on board Air France Flight 447. Plaintiff CAMILLE LACOME is also the mother and

23 | legal guardian for ZOURI SALEMKOUR LACOME, a French national and surviving minor

24 | child of SAMIR SALEMKOUR.

25 | 7. Plaintiff MATTHIEU ARRONDO is a French national, and is the successor-in-

26 | interest to his mother CATHERINE ARRONDO TAKVORIA and Personal Representative of

27 | her Estate, who died on board Air France Flight 447.

28 |

1      8.    Plaintiff CHANTAL KOEHLER is a French national, and is the successor-in-

2  interest to her daughter AUDREY QUESADA, and her grandchildren SANA ZERELLI and

3  JASSIM ZERELLI and Personal Representative of their Estates, who died on board Air France

4  Flight 447.

5      9.    Plaintiff GUY WARRIOR is a British national, and is the successor-in-interest to

6  his brother NEIL WARRIOR and Personal Representative of his Estate, who died on board Air

7  France Flight 447.

8      10.    Defendants AIRBUS, S.A.S. is a French corporation with its principal place of

9  business located in Toulouse, France. Defendant AIRBUS AMERICAS, INC. is a Delaware

10  corporation with its principal place of business in Herndon, Virginia. Defendants AIRBUS,

11  S.A.S. and AIRBUS AMERICAS, INC. (collectively "AIRBUS") design, manufacture,

12  assemble, market, and sell commercial aircraft around the world, including the aircraft involved

13  in the Air France Flight 447 crash.

14      11.    This Court has general jurisdiction over defendant AIRBUS as these defendants

15  do continuous and systematic business in this State, sufficient to subject them to the jurisdiction

16  of this State.

17      12.    Defendant HONEYWELL INTERNATIONAL, INC., ("HONEYWELL") is a

18  Delaware corporation with its principal place of business in Morristown, New Jersey.

19  HONEYWELL designs, manufactures, assembles, markets, and sells aerospace systems and

20  products, including systems that were part of the Subject Aircraft and involved in the Flight 447

21  crash.

22      13.    This Court has general jurisdiction over defendant HONEYWELL in that this

23  defendant does continuous and systematic business in this State, including maintaining

24  manufacturing, sales, and administrative offices in this State, sufficient to subject it to the

25  jurisdiction of this State.

26      14.    Defendant ROCKWELL COLLINS, INC. ("ROCKWELL COLLINS") is a

27  Delaware corporation with its principal place of business in Cedar Rapids, Iowa. ROCKWELL

28  COLLINS designs, manufactures, assembles, markets, and sells aerospace systems and

1  products, including systems that were part of the Subject Aircraft and involved in the Flight 447
2  crash.

3      15.     This Court has general jurisdiction over defendant ROCKWELL COLLINS as
4  this defendant does continuous and systematic business in this State, sufficient to subject it to
5  the jurisdiction of this State.

6      16.     Defendant THALES GROUP is a French corporation with its principal place of
7  business in Neuilly-sur-Seine, France. Defendant THALES U.S.A., INC. is a Delaware
8  corporation with its principal place of business in Arlington, Virginia. Defendants THALES
9  GROUP and THALES U.S.A., INC. (collectively "THALES") design, manufacture, assemble,
10  market, and sell aerospace systems and products, including systems that were part of the
11  Subject Aircraft and involved in the Flight 447 crash.

12      17.     This Court has general jurisdiction over defendant THALES as this defendant
13  does continuous and systematic business in this State, sufficient to subject it to the jurisdiction
14  of this State

15      18.     Defendant MOTOROLA, INC. ("MOTOROLA") is a Delaware corporation with
16  its principal place of business in Schaumberg, Illinois. MOTOROLA designs, manufactures,
17  assembles, markets, and sells telecommunications products, including products that were part of
18  the Subject Aircraft and involved in the Flight 447 crash.

19      19.     This Court has general jurisdiction over defendant MOTOROLA as this defendant
20  does continuous and systematic business in this State, sufficient to subject it to the jurisdiction
21  of this State

22      20.     Defendant INTEL CO. ("INTEL") is a Delaware corporation with its principal
23  place of business in Santa Clara, California. INTEL designs, manufactures, assembles, markets,
24  and sells microprocessors and computing products, including products that were part of the
25  Subject Aircraft and involved in the Flight 447 crash.

26      21.     This Court has general jurisdiction over defendant INTEL as this defendant
27  resides in this State, and does continuous and systematic business in this State, sufficient to
28  subject it to the jurisdiction of this State

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

5
**COMPLAINT FOR DAMAGES**

22. Defendant HAMILTON SUNDSTRAND CORP. ("HAMILTON SUNDSTRAND") is a Delaware corporation with its principal place of business in Windsor Locks, Connecticut. HAMILTON SUNDSTRAND designs, manufactures, assembles, markets, and sells aerospace systems and products, including systems that were part of the Subject Aircraft and involved in the Flight 447 crash.

23. This Court has general jurisdiction over defendant HAMILTON SUNDSTRAND as this defendant does continuous and systematic business in this State, sufficient to subject it to the jurisdiction of this State.

24. Defendant GENERAL ELECTRIC CO. is a New York corporation with its principal place of business in Fairfield, Connecticut. GE AVIATION SYSTEMS, LLC is Delaware limited liability company with its principal place of business in Cincinnati, Ohio. Defendants GENERAL ELECTRIC CO. and GE AVIATION SYSTEMS, LLC (collectively "GE") design, manufacture, assemble, market, and sell aerospace systems and products, including aircraft engines, that were part of the Subject Aircraft and involved in the Flight 447 crash.

25. This Court has general jurisdiction over GE as these defendants do continuous and systematic business in this State, sufficient to subject them to the jurisdiction of this State.

26. Defendant GOODRICH CORP. ("GOODRICH") is a New York corporation with its principal place of business in Charlotte, North Carolina. GOODRICH designs, manufactures, assembles, markets, and sells aerospace systems and products, including systems that were part of the Subject Aircraft and involved in the Flight 447 crash.

27. This Court has general jurisdiction over defendant GOODRICH as this defendant does continuous and systematic business in this State, sufficient to subject it to the jurisdiction of this State.

28. Defendant DUPONT CO. ("DUPONT") is a Delaware corporation with its principal place of business in Wilmington, Delaware. DUPONT designs, manufactures, assembles, markets, and sells wiring and other electrical products, including products that were part of the Subject Aircraft and involved in the Flight 447 crash.

29. This Court has general jurisdiction over defendant DUPONT as this defendant does continuous and systematic business in this State, sufficient to subject it to the jurisdiction of this State.

30. Defendant JUDD WIRE CO. ("JUDD WIRE") is a Delaware corporation with its principal place of business in Turners Falls, Massachusetts. JUDD WIRE designs, manufactures, assembles, markets, and sells wiring products, including aerospace wiring that was part of the Subject Aircraft and involved in the Flight 447 crash.

31. This Court has general jurisdiction over defendant JUDD WIRE as this defendant does continuous and systematic business in this State, sufficient to subject it to the jurisdiction of this State.

32. Defendant RAYCHEM CO. ("RAYCHEM") is a Delaware corporation with its principal place of business in Menlo Park, California. RAYCHEM designs, manufactures, assembles, markets, and sells wiring products, including aerospace wiring that was part of the Subject Aircraft and involved in the Flight 447 crash.

33. This Court has general jurisdiction over defendant RAYCHEM as this defendant resides in this State and does continuous and systematic business in this State, sufficient to subject it to the jurisdiction of this State.

## GENERAL ALLEGATIONS

34. On May 31, 2009, Air France Flight 447 departed Rio de Janeiro, Brazil, bound for Paris, France ("Flight 447"). The flight took place on an Airbus A330-200 aircraft registered F-GZCP (the "Subject Aircraft"), with 216 passengers and 12 crew members on board. Due to design and manufacturing defects in the Subject Aircraft and its components, Flight 447 crashed into the Atlantic Ocean approximately 680 miles off the coast of Brazil, killing everyone on board.

35. The Plaintiffs herein are the heirs, survivors, successors-in-interest, and personal representatives of the estates of eight fare-paying passengers on board Air France Flight 447, including minor children, wives, husbands, mothers, and fathers.

36.     Flight 447 was operated by the commercial airline Societe Air France ("Air France"), which also owned or leased the Subject Aircraft.

37.     On a date prior to the crash, AIRBUS designed, manufactured, assembled, marketed, and sold Subject Aircraft. At the time that the Subject Aircraft left the custody and control of AIRBUS, it was in a defective and unreasonably dangerous condition, including that the radar system did not provide accurate data and weather information; the pilot tubes had a tendency to become blocked and provide inaccurate speed information to the aircraft's air data inertial reference units ("ADIRU") and flight control computers; the angle of attack sensors provided inaccurate data to the ADIRUs and fight control computers; the ADIRUs provide inaccurate information to the flight control computers and failed to filter out erroneous data concerning airspeed and angle of attack; the flight control computers failed to filter out erroneous data from the ADIRUs and their component parts; the sidestick controls provided inaccurate information to the flight control computers; the fight control computers were such that they did not prevent dangerous, erroneous, and unauthorized flight control movements; the on-board software installed on the flight control computers, ADIRUs, and other components failed to adequately filter out inaccurate data and provided erroneous information; the microprocessors used in the flight control computers, ADIRUs, and other components prevented the installed software from functioning properly and created inaccurate data; fight the on-board ice detection system failed to properly detect and warn of the accumulation of ice on the aircraft, including its engines; the aircraft engines lacked sufficient power to allow the aircraft to recover from a stall in reasonably anticipated situations; the aircraft engines experienced uncommanded power surges that resulted in the aircraft departing from controlled flight; the aircraft engines were subject to accumulation of ice and did not include a safe method to detect, warn, and remove accumulated ice on the aircraft and its engines; the aircraft wiring was subject to wet and dry arcing, chafing, cracking, hydrolysis and pyrolization of insulation, which resulted in inaccurate information to be sent to the ADIRUs and flight control computers; the ADIRUs, flight control computers, and other aircraft components lacked sufficient

1 protection from electromagnetic interference; and the aircraft was unable to adequately or safely
2 recover from unusual altitudes.

3     38.     Defendant HONEYWELL designed, manufactured, assembled, marketed, and
4 sold, component parts included on the Subject Aircraft, including but not limited to the ADIRU.
5 The ADIRU and other component parts designed and manufactured by HONEYWELL were
6 defective when they left the custody and control of HONEYWELL, and a proximate cause of
7 the crash as alleged above.

8     39.     Defendant ROCKWELL COLLINS designed, manufactured, assembled,
9 marketed, and sold, component parts included on the Subject Aircraft, including but not limited
10 to the radar system. The radar system and other component parts designed and manufactured
11 by ROCKWELL COLLINS were defective when they left the custody and control of
12 ROCKWELL COLLINS, and a proximate cause of the crash as alleged above.

13     40.     Defendants THALES designed, manufactured, assembled, marketed, and sold,
14 component parts included on the Subject Aircraft, including but not limited to the pilot tubes
15 and the software installed on the ADIRUs and flight control computers. The pilot tubes,
16 software, and other component parts designed and manufactured by THALES were defective
17 when they left the custody and control of THALES, and a proximate cause of the crash as
18 alleged above.

19     41.     Defendant MOTOROLA designed, manufactured, assembled, marketed, and sold,
20 component parts included on the Subject Aircraft, including but not limited to the
21 microprocessors in the ADIRUs and flight control computers. The microprocessors and other
22 component parts designed and manufactured by MOTOROLA were defective when they left
23 the custody and control of MOTOROLA, and a proximate cause of the crash as alleged above.

24     42.     Defendant INTEL designed, manufactured, assembled, marketed, and sold,
25 component parts included on the Subject Aircraft, including but not limited to the
26 microprocessors in the ADIRUs and flight control computers. The microprocessors and other
27 component parts designed and manufactured by INTEL were defective when they left the
28 custody and control of INTEL, and a proximate cause of the crash as alleged above.

43. Defendant HAMILTON SUNDSTRAND designed, manufactured, assembled, marketed, and sold, component parts included on the Subject Aircraft, including but not limited to the sidestick control. The sidestick control and other component parts designed and manufactured by HAMILTON SUNDSTRAND were defective when they left the custody and control of HAMILTON SUNDSTRAND, and a proximate cause of the crash as alleged above.

44. Defendants GE designed, manufactured, assembled, marketed, and sold, component parts included on the Subject Aircraft, including but not limited to the aircraft engines. The aircraft engines and other component parts designed and manufactured by GE were defective when they left the custody and control of GE, and were a proximate cause of the crash as alleged above.

45. Defendant GOODRICH designed, manufactured, assembled, marketed, and sold, component parts included on the Subject Aircraft, including but not limited to the angle of attack sensors and in-flight ice detection system. The angle of attack sensors, in-flight ice detection system, and other component parts designed and manufactured by GOODRICH were defective when they left the custody and control of GOODRICH, and were a proximate cause of the crash as alleged above.

46. Defendants DUPONT, JUDD WIRE, and RAYCHEM designed, manufactured, assembled, marketed, and sold, component parts included on the Subject Aircraft, including but not limited to the wiring used on the Subject Aircraft. The wiring and other component parts designed and manufactured by DUPONT, JUDD WIRE, and RAYCHEM were defective when they left the custody and control of these Defendants, and were a proximate cause of the crash as alleged above.

47. The defendants also failed to include adequate warnings of the above-described defects, and AIRBUS failed to provide its Airbus A330 pilots with sufficient manual flight training and testing during initial type qualification, and did not take sufficient steps to ensure that the Airbus A330 pilots remained proficient in flying the aircraft manually.

48. As a direct and proximate cause of the defects, negligence, and other misconduct alleged herein, each Defendant is liable to Plaintiffs for all the damages caused to those killed in

1 Flight 447, as well as survivor damages due to Plaintiffs. The amount in controversy well
2 exceeds $75,000.

## COUNT I

### Negligence; Against all Defendants

5    49.    Plaintiffs reallege Paragraphs 1 through 48 as though fully set forth herein.

6    50.    In designing, manufacturing, assembling, marketing, and selling the Subject
7 Aircraft and its component parts, Defendants owed Plaintiffs and their decedents a duty to
8 design and manufacture the aircraft and its component parts in such a way that they were
9 reasonably safe, free of defects, and would not cause injury or death to aircraft passengers.
10 Defendants knew that the Subject Aircraft and its component parts would be used for air travel
11 and any defects would create the serious risk of harm or death.

12    51.    Defendants breached their duties to Plaintiffs and their decedents by defectively
13 designing the Subject Aircraft and its component parts, as alleged above. Defendants further
14 breached their duties to Plaintiffs by defectively manufacturing the Subject Aircraft and its
15 component parts, as alleged above.

16    52.    As a direct and proximate result of Defendants' negligence, the Subject Aircraft
17 crashed into the Atlantic Ocean on June 1, 2009, killing Plaintiffs' decedents, causing severe
18 terror and pain prior to impact, and resulting in both personal and pecuniary injuries, in an
19 amount to be proven at trial. Plaintiffs are the decedents' surviving heirs and successors-in-
20 interest, who have suffered grief, loss of support, companionship, and care, in an amount to be
21 proven at trial.

22    WHEREFORE, Plaintiffs pray for judgment as fully set forth below.

## COUNT II

### Products Liability; Against all Defendants

25    53.    Plaintiffs reallege Paragraphs 1 through 52 as though fully set forth herein.

26    54.    Defendants designed, manufactured, assembled, marketed, and sold the Subject
27 Aircraft and its component parts, as alleged above. The Subject Aircraft and its component
28 parts were defective and unreasonably dangerous, and left the custody and control of

1 Defendants in that defective and unsafe condition. Defendants knew that their defective
2 products were to be used in a commercial aircraft, and any such defect was likely to result in
3 serious injury or death.

4    55.    On information and belief, there were alternative, safer designs for the Subject
5 Aircraft and the component parts described above, that would have prevented or significantly
6 reduced the risk of injury and death when used as part of a commercial aircraft. These
7 alternative designs were economically and technologically feasible at the time of design and
8 manufacture.

9    56.    Defendants further failed to provide warnings to each other, Air France,
10 Plaintiffs' decedents, and Plaintiffs of the defective and unreasonably dangerous design and
11 manufacturing defects present in their products used aboard the Subject Aircraft, or that such
12 defects could and would result in serious risk of injury and death.

13    57.    As a direct and proximate result of the design and manufacturing defects as
14 alleged above, and Defendants' failure to warn, the Subject Aircraft crashed into the Atlantic
15 Ocean on June 1, 2009, killing Plaintiffs' decedents, causing severe terror and pain prior to
16 impact, and resulting in both personal and pecuniary injuries, in an amount to be proven at trial.
17 Plaintiffs are the decedents' surviving heirs and successors-in-interest, who have suffered grief,
18 loss of support, companionship, and care, in an amount to be proven at trial.

19    WHEREFORE, Plaintiffs pray for judgment as fully set forth below.

20 **PRAYER FOR RELIEF**

21    Plaintiffs pray for judgment against Defendants as follows:

22    A.    Damages to be awarded in an amount to be determined at trial, including general,
23 special, and compensatory damages;

24    B.    Prejudgment interest;

25    C.    Costs incurred in bringing this suit; and

26    D.    Such other and further relief as the Court may deem just and proper.

27

28

1

2    Dated: October 21, 2009

3                                            Michael P. Verna
                                             Steven P. McFarlane
4                                            Attorneys for Plaintiffs
                                             BOWLES & VERNA, LLP
5                                            2121 n. California Blvd., Suite 875
6                                            Walnut Creek, California 94596
                                             Tel: (925) 935-3300
7                                            Fax: (925) 935-0371
8                                            Email: mverna@bowlesverna.com

9                                            James Healy-Pratt
10                                           Stewarts Law, LLP
                                             5 New Street Square
11                                           London EC4A 3BF
                                             United Kingdom
12                                           Telephone: +44 (0) 20 7822 8000
13                                           Email: jhp@stewartslaw.com
                                             (admitted to bar of New York; *pro hac vice*
14                                           application pending)
15                                           Attorneys for Plaintiffs

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2        Plaintiffs hereby demand a trial by jury for all claims for which a jury trial is available,

3   pursuant to Federal Rules of Civil Procedure 38(a) and (b).

4

5   Dated: October 21, 2009

6                                                 Michael P. Verna
                                                  Steven P. McFarlane
7                                                 Attorneys for Plaintiffs
                                                  BOWLES & VERNA, LLP
8                                                 2121 n. California Blvd., Suite 875
9                                                 Walnut Creek, California 94596
                                                  Tel:  (925) 935-3300
10                                                Fax:  (925) 935-0371
11                                                Email: mverna@bowlesverna.com

12                                                James Healy-Pratt
                                                  Stewarts Law, LLP
13                                                5 New Street Square
14                                                London EC4A 3BF
                                                  United Kingdom
15                                                Telephone: +44 (0) 20 7822 8000
16                                                Email: jhp@stewartslaw.com
                                                  (admitted to bar of New York; *pro hac vice*
17                                                application pending)
18                                                Attorneys for Plaintiffs

19

20

21

22

23

24

25

26

27

28

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

14

**COMPLAINT FOR DAMAGES**