IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE AIR CRASH OVER THE MID-ATLANTIC ON JUNE 1, 2009 | MDL Docket No. 10-2144-CRB<br>**ORDER GRANTING *FORUM NON CONVENIENS* DISMISSAL** |

In one of the most tragic airline accidents in history, an Air France flight left Brazil for France and crashed over the Atlantic Ocean on June 1, 2009. All 228 passengers and crew lost their lives. Many representatives of those passengers have filed lawsuits in the United States, and those suits were consolidated for pre-trial purposes in this Court. The Court has great sympathy for all the families who lost loved ones in this horrific accident and is interested in seeing those families fairly and timely compensated. But sympathy cannot be a substitute for an unbiased application of the law. Because in this Court's view an unbiased application of the law shows that these matters should be dismissed for *forum non conveniens*, that is the Court's Order.

## I. GENERAL PROCEDURAL FRAMEWORK

There are four Motions before the Court, all broadly concerning where litigation regarding the crash should (and should not) take place.[1] The four Motions are as follows:

---

[1] The plurality of passengers and crew onboard were French, a substantial number were Brazilian, and the majority of the remaining passengers were from European countries outside of France. (continued)

(1) Air France's Motion pursuant to Rule 12(b)(1) to dismiss the domestic Plaintiffs' case on the ground that this Court lacks subject matter jurisdiction under the MC; (2) Air France's Motion pursuant to Rule 12(b)(1) to dismiss the third-party claims brought by the Manufacturing Defendants on the ground that this Court lacks subject matter jurisdiction under the MC; (3) Air France's Motion to Dismiss all actions in which it is a party on *forum non conveniens* grounds; and (4) the Manufacturing Defendants' Motion to Dismiss all actions on *forum non conveniens* grounds.

This Opinion proceeds as follows. First, the Court discusses and rejects Air France's Motion to Dismiss the domestic Plaintiffs on jurisdictional grounds. Second, the Court discusses why this case is dismissed for *forum non conveniens*.

## II. AIR FRANCE'S MOTION TO DISMISS THE DOMESTIC PLAINTIFFS UNDER RULE 12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION

Air France moves to dismiss the domestic Plaintiffs' case because, in its view, this Court lacks subject matter jurisdiction under the MC. The MC is a treaty, enacted in the United States on November 4, 2003, that covers "all international carriage of persons, baggage or cargo performed by aircraft for reward." MC Art. 1(1). It provides the "exclusive basis for a lawsuit against an air carrier for injuries arising out of international transportation." Kruger v. United Airlines, Inc., 481 F. Supp. 2d 1005, 1008 (N.D. Cal. 2007).

The MC sets forth five jurisdictions in which an action by a passenger against a carrier may be brought:

(1)   "the court of domicile of the carrier"

(2)   the location of the carrier's "principal place of business"

---

The parties can be placed into four groups: (1) the carrier (Air France); (2) the domestic Plaintiffs (representing the two American decedents); (3) the foreign Plaintiffs; and (4) the Manufacturing Defendants (third-party Plaintiffs).

Only the domestic Plaintiffs have sued Air France as a direct defendant. Indeed, only the domestic Plaintiffs can sue Air France here because the Montreal Convention ("MC"), an international treaty governing litigation between passengers and carriers, limits the locations where passengers can sue carriers for injury suffered onboard a plane.

(3) "where the carrier has a place of business through which the contract has been made"

(4) "the court at the place of destination"

(5) **"the territory of a State Party in which at the time of the accident the passenger has his or her principal and permanent residence . . . ."**[2]

MC, Art. 33(1), (2) (emphasis added). A passenger's "principal and permanent residence" is defined as "the one fixed and permanent abode of the passenger at the time of the accident." MC, Art. 33(3)(b). The parties agree that, if jurisdiction over the domestic Plaintiffs' claims against Air France is proper in the United States, it is proper pursuant to the "fifth jurisdiction."

### A. Background Facts

Air France sets forth facts that it believes show that the domestic Plaintiffs – representing Mr. and Mrs. Harris who perished in the crash – cannot invoke the "fifth jurisdiction" because the decedents' "principal and permanent residence" "at the time of the accident" was in Brazil, not the United States. Air France's Mot. to Dismiss Under Rule 12(b)(1) (Dkt. 156) at 7.[3] Air France points to, among other things, the following:

- at the time of the accident, decedents were living in Brazil;
- at the time of the accident, Mr. Harris was working for a foreign affiliate of an American company;
- at the time of the accident, Mr. Harris had been residing in Brazil for approximately 13 months and Mrs. Harris had been residing in Brazil for approximately 12 months;
- at the time of the accident, decedents were traveling on round trip tickets purchased in Brazil with no stops in the United States;

---

[2] The "fifth jurisdiction" is new to the MC. It was not included in the MC's predecessor, the Warsaw Convention, and its addition "reflects the drafters' efforts to enhance passengers' rights under the new treaty." Baah v. Virgin Atl. Airways Ltd., 473 F. Supp. 2d 591, 596 n.8 (S.D.N.Y. 2007); see also Hornsby v. Lufthansa German Airlines, 593 F. Supp. 2d 1132, 1139 (C.D. Cal. 2009).

[3] Page citations to docketed filings are to the page of the electronic document.

3

1　　•　　at the time of the accident, decedents represented that they were "bona fide
2　　　　　residents" of Brazil and paid income tax there; and
3　　•　　six months prior to the accident, the decedents moved over 5000 pounds worth
4　　　　　of household goods from Texas to Brazil.
5 Id.

6　Plaintiffs provide facts to show that the Harrises' "principal and permanent residence" was in the United States even though they were living in Brazil at the time of the accident. Plaintiffs point to, among other things, the following:

- Mr. Harris regularly spent time away from home on temporary international assignments;
- Mr. Harris never expressed that he had an interest in leaving the United States permanently;
- The assignment he was on was temporary;
- The Harrises kept their home in Texas and Mrs. Harris's son lived in and maintained it;
- The Harrises received mail at their Texas home;
- The Harrises left their cars in Texas;
- The Harrises filed tax returns in Texas.

Domestic Pls.' Resp. in Opp'n to Air France's Mot. to Dismiss (Dkt. 642) at 16-19.

**B.　Legal Standard**

Attacks on jurisdiction under Rule 12(b)(1) can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). For facial attacks, the allegations in the complaint are taken as true. See, e.g., Whisnant v. U.S., 400 F.3d 1177, 1179 (9th Cir. 2005). When the motion challenges the jurisdictional facts presented in the complaint, the court may consider evidence properly before it, and the party opposing the motion has the burden of establishing subject matter jurisdiction. See, e.g., Savage v. Glendale Union High School, 343 F.3d 1036, 1040 (9th Cir. 2003). Where, as here, the motion attacks facts

4

relevant to the determination of whether there is subject matter jurisdiction, the declarations submitted by the parties can be reviewed by the Court. See Polanski v. KLM Royal Dutch Airlines, 378 F. Supp. 2d 1222, 1228 (S.D. Cal. 2005) (discussing Rule 12(b)(1) challenge under predecessor to the MC).

### C. The Harrises' "Principal and Permanent Residence" at the Time of the Accident was in the United States

The district court in Hornsby, 593 F. Supp. 2d at 1132, conducted a thorough analysis of the meaning of the phrase "principal and permanent residence" in the MC. That case dealt with a suit by an American plaintiff against a foreign carrier as a result of injuries sustained onboard a plane. Id. At the time of the accident, the plaintiff was living in Germany. As in this case, the carrier argued that the court should dismiss for want of subject matter jurisdiction because the MC made the "fifth jurisdiction" the location where the plaintiff was living at the time of the accident (Germany). The issue before the court in Hornsby – the meaning of "principal and permanent residence" and "fixed and permanent abode" – is the issue before this Court as well. If those phrases combine to mean something like "domicile" then Plaintiffs prevail, but if they combine to mean something like "residence" then Air France prevails.

Hornsby reached the following conclusion as to the meaning of the phrases:

> The only conclusion to be drawn . . . is that the phrase "fixed and permanent abode" is closer in meaning to the word "domicile" than the word "residence," and that the intent of the party is relevant to determining his or her "fixed and permanent abode." Thus, intent must also be relevant to the phrase "principal and permanent residence" . . . .

593 F. Supp. 2d at 1137-38.

The conclusion drawn by the court in Hornsby makes sense. The word "permanent" implies something other than just a determination of where a person was living at the time of the accident, and the available drafting history does not support the conclusion that the drafters meant to eschew a meaning similar to "domicile." Id. Although there was some disagreement among the delegates about including the word "domicile," and it ultimately was not included, that disagreement stemmed from the word's different meaning in English

5

than in French. To avoid confusion, the drafters used the phrase "principal and permanent residence," "[b]ut the fact that the language was changed does not necessarily indicate that the new language in the English version was intended to have a substantially different meaning [than domicile]." Hornsby, 593 F. Supp. 2d at 1139. Moreover, treating "principal and permanent residence" like "domicile" is consistent with the purpose of the fifth jurisdiction – "enhanc[ing] passengers' rights under the [] treaty." Baah, 473 F. Supp. 2d at 597 n.8; Hornsby, 593 F. Supp. 2d at 1139.

Air France rejects the analysis in Hornsby on several grounds and argues that the Court should focus on the decedents' residence at the time of the accident. None of Air France's arguments are persuasive.

First, Air France cites to Seales v. Panamanian Aviation Co., No. 07-CIV-2901, 2009 WL 395821 (E.D.N.Y. Feb. 18, 2009), which it asserts adopted a different reading of "principal and permanent residence" that did not resemble "domicile." But Seales did not conduct any analysis of the meaning of "principal and permanent residence." Rather, the court simply held that the plaintiff failed to meet his burden of establishing that his "principal and permanent residence" was in the United States. Id. at *10.

Second, Air France stresses that the inclusion of the language "at the time of the accident" forecloses the conclusion that the language means something akin to "domicile." That argument is unpersuasive because the phrase "at the time of the accident" merely tells the court the time period upon which it should focus in deciding the location of the "principal and permanent" residence. It does not tell the court whether the inquiry amounts to asking where the passenger was "residing" or instead where the passenger was "domiciled."

Finally, Air France suggests that treating "principal and permanent residence" like "domicile" is the opposite of what was intended by the drafters because they wanted a straightforward, simple test that did not turn on nationality. This position suffers from two flaws. First, if the drafters wanted the fifth jurisdiction to turn on where the passenger was residing at the time of the accident they could have excluded the words "principal and permanent" before the word "residence." Second, treating "principal and permanent

6

residence" like "domicile" does not make the fifth jurisdiction turn on nationality. If the evidence supported the conclusion that the Harrises were <u>domiciled</u> in Brazil at the time of the accident, then Brazil (not the United States) would be the fifth jurisdiction notwithstanding the Harrises' status as American citizens.

Accordingly, based on the evidence that the Harrises were <u>temporarily</u> living in Brazil while Mr. Harris completed an international work assignment, their "principal and permanent residence" (their "one fixed and permanent abode") was in the United States at the time of the crash. <u>See</u> <u>Hornsby</u>, 593 F. Supp. 2d at 1133. Therefore, the United States is the fifth jurisdiction, and Air France's Motion to Dismiss the domestic Plaintiffs on jurisdictional grounds is denied.[4]

### III. *FORUM NON CONVENIENS*

#### A. Legal Standard

A party moving to dismiss based on *forum non conveniens* bears the burden of showing that (1) there is an adequate alternative forum, and (2) the balance of private and public interest factors favors dismissal. <u>See</u> <u>Lueck v. Sundstrand Corp.</u>, 236 F.3d 1137, 1142-43 (9th Cir. 2001). A domestic plaintiff's forum choice is entitled to considerable deference, whereas a foreign plaintiff's forum choice is entitled to less deference. <u>Ravelo Monegro v. Rosa</u>, 211 F.3d 509, 513 (9th Cir. 2000) (citing <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 256 (1981)).

The plaintiff's choice of forum will not be disturbed unless the private and public interest factors strongly favor trial in the foreign country. <u>See</u> <u>Gates Learjet</u> <u>Corp. v. Jensen</u>, 743 F.2d 1325, 1334 (9th Cir. 1984). "[T]he standard to be applied [to a motion for dismissal on the ground of *forum non conveniens*] is whether . . . defendants have made a

---

[4] Air France has also moved to dismiss on jurisdictional grounds the Manufacturing Defendants' third-party claims. <u>See</u> Mot. to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. 609). The Court does not reach the merits of this Motion because it is mooted by the Court's dismissal of these actions on *forum non conveniens* grounds. Although questions of subject matter jurisdiction typically ought to be addressed before procedural questions, that general rule does not apply where, as here, the district court elects to dismiss for *forum non conveniens*. <u>See</u> <u>Sinochem Intern. Co. v. Malaysia Intern. Shipping Corp.</u>, 549 U.S. 422, 436 (2007) ("[W]here subject matter . . . jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course.").

7

clear showing of facts which . . . establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." Cheng v. Boeing Co., 708 F.2d 1406, 1410 (9th Cir. 1983) (internal quotation marks and citation omitted).

### B. Discussion

#### 1. The MC Recognizes the Doctrine of *Forum Non Conveniens*

The domestic Plaintiffs argue that the MC, under which they brought their case against Air France, does not recognize the doctrine of *forum non conveniens*. Domestic Pls.' Resp. in Opp'n to Mot. to Dismiss (Dkt. 644) at 20-34. The basis for this argument is twofold. First, that the Ninth Circuit has already held that the predecessor to the MC, the Warsaw Convention, did not recognize *forum non conveniens* and the language used in the MC is the same as the language used in the Warsaw Convention. See Hosaka v. United Airlines, Inc., 305 F.3d 989, 993 (9th Cir. 2002) ("[T]he Warsaw Convention overrides the discretionary power of the federal courts to dismiss an action for *forum non conveniens*."). Second, that *forum non conveniens* is incompatible with the fifth jurisdiction, the purpose of which is to afford aggrieved passengers the option to sue in their home forum.

As discussed below, the Court concludes that the MC does not override the discretionary power of this Court to dismiss an action for *forum non conveniens*.

##### a. The Ninth Circuit Has Held that the Warsaw Convention did Not Recognize *Forum Non Conveniens*

The Ninth Circuit has held that the Warsaw Convention, the predecessor to the MC, did not recognize the doctrine of *forum non conveniens*. Id. The court recognized that the Warsaw Convention incorporated the forum state's procedural law, which as a general matter in this country includes the doctrine of *forum non conveniens*. Id. at 995 (citing In re Air Crash Off Long Island New York, 65 F. Supp. 2d 207, 214 (S.D.N.Y. 1999); In re Air Crash Disaster Near New Orleans, 821 F.2d 1147, 1161 (5th Cir. 1987)). However, the court noted that the doctrine of *forum non conveniens* conflicted with the purpose of the Warsaw Convention – allowing plaintiffs flexibility in choice of forum – and "would undermine the goal[s] of uniformity [and balance]." Id. at 996-97. Moreover, the court noted further that

8

"when a multilateral treaty has meant to allow application of the doctrine [of *forum non conveniens*], the treaty has said so explicitly." Id. at 1001.

Like the Warsaw Convention, the MC incorporates the procedural law of the site of the lawsuit but is silent about whether the doctrine of *forum non conveniens* is available. See Pierre-Louis v. Newvac Corp., 584 F.3d 1052 (11th Cir. 2009) (aff'g sub nom. In re West Caribbean Airways, S.A., 619 F. Supp. 2d 1299 (S.D. Fla. 2007)).

### b. Hosaka Does Not Compel the Conclusion that *Forum Non Conveniens* is Unavailable in MC Cases

There are two primary reasons why Hosaka does not compel the conclusion that *forum non conveniens* is unavailable in MC cases.

First, Hosaka was interpreting the Warsaw Convention, and Hosaka explicitly noted that it was not addressing the applicability of *forum non conveniens* under the (at the time not yet ratified) MC. 305 F.3d at 1001 n.17. At the time of the Warsaw Convention's drafting in 1929, the doctrine of *forum non conveniens* was relatively new. Thus, the Warsaw Convention's silence on the availability of *forum non conveniens* dismissal meant that it was not available absent a clear statement to the contrary. Hosaka, 305 F.3d at 1002 ("At the time of the drafting and ratification of the [Warsaw] Convention, the *forum non conveniens* doctrine was not the 'valuable procedural tool' that it might be considered today."). The MC, on the contrary, was ratified recently, and by that time the doctrine of *forum non conveniens* was well established and had even been used in the United States to dismiss Warsaw Convention actions. Id. Against this changed backdrop, reaffirming (as the MC did) that a state's procedural law applies suggests that *forum non conveniens* dismissals are available. Moreover, this was the position taken by the United States during MC negotiations and after.[5] In re West Caribbean Airways, S.A., 619 F. Supp. 2d at 1326 ("In the end, the

---

[5] The United States, via attorneys from the United States Departments of Justice, State, and Transportation, filed an official Statement of Interest in the In re West Caribbean Airways case. See 28 U.S.C. § 517.

> The Statement makes clear that the United States did not relinquish the ability of its courts to apply *forum non conveniens* in Montreal Convention cases because it and its component agencies are often named in suits arising under

9

1  consensus among the delegates was to omit any language respecting the applicability of
2  *forum non conveniens* to avoid imposing the doctrine on States that do not employ it and
3  distorting its application in States where it is commonly employed."); Bread v. Greene, 523
4  U.S. 371, 375 (1998) ("[A]bsent a clear and express statement to the contrary, the procedural
5  rules of the forum State govern the implementation of the treaty in that State.").

6      Second, the courts that have addressed this issue in the context of the MC have held
7  that *forum non conveniens* is available. For example, in Pierre-Louis v. Newvac Corp., the
8  Eleventh Circuit held that "we are satisfied that a district court may – where appropriate –
9  exercise its discretion to apply *forum non conveniens*, without interfering with the
10 implementation of the Convention, so long as another Convention jurisdiction is available
11 and can more conveniently adjudicate the claim." 584 F.3d at 1058; see also Khan v. Delta
12 Airlines, Inc., Civ. No. 10-2080, 2010 WL 3210717, at *2 (E.D.N.Y. Aug. 12, 2010) (MC
13 allows district courts to utilize their own procedural rules, including dismissal pursuant to the
14 doctrine of *forum non conveniens*).

15     Accordingly, this Court concludes that the MC does not override the Court's power to
16 dismiss an action for *forum non conveniens*. This holding does not render the inclusion of
17 the "fifth jurisdiction" meaningless, as the domestic Plaintiffs suggest. Rather, the
18 combination of the "fifth jurisdiction" and incorporation of a forum State's procedural law
19 shows an intent to give plaintiffs a choice among different fora but also to constrain that
20 choice to allow courts where *forum non conveniens* is available to assess whether a different
21 forum is more appropriate. See In re West Caribbean Airways, S.A., 619 F. Supp. 2d at 1316

---

23/24/25/26  the Convention and because the United States has a significant interest in avoiding forum shopping and congestion in its courts when a foreign forum provides a more just, convenient and suitable alternative. Accordingly, the United States understands the text of Article 33(4) to mean that the Montreal Convention "defers to the forum's laws on <u>all</u> questions of procedure and manifests an intent by the drafters not to alter the judicial system of any country on questions of procedure."

27/28 In re West Caribbean Airways, S.A., 619 F. Supp. 2d at 1328 (emphasis added). Although this Court is not bound to follow the interpretation of the MC set forth by the government, "the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight." Sumitomo Shoji Am., Inc. v. Avagliano, 457 U.S. 176, 184-85 (1982) (citation omitted).

10

("[A] decision to dismiss in favor of one of the fora designated by Article 33 would not appear to upset the balance the drafters of the Montreal Convention intended to strike between the interests of passengers and airlines."). Moreover, it is not a court's role to ignore a policy choice in a treaty (incorporating a forum State's procedural law, including *forum non conveniens*) because the court might have reached a different conclusion about the best policy after balancing the interests at stake. See generally Bibb v. Navajo Freight Lines, Inc., 359 U.S. 520, 524 (1959) ("If there are alternative ways of solving a problem, we do not sit to determine which of them is best suited to achieve a valid state objective.").

### 2. *Forum Non Conveniens* Dismissal is Warranted in This Case

#### a. In Closely Analogous Cases, Courts Inside and Outside the Ninth Circuit Have Dismissed Similar Actions on *Forum Non Conveniens* Grounds

Courts inside and outside the Ninth Circuit have dismissed on *forum non conveniens* grounds air crash cases brought primarily by foreign Plaintiffs. For example, in Lueck, the Ninth Circuit affirmed a *forum non conveniens* dismissal of the claims of foreign passengers injured or killed on a plane crash in New Zealand. 236 F.3d at 1147. Notably, the Ninth Circuit reached this conclusion even though, as here, the plaintiffs sued American component part manufacturers. Id. at 1140.

As to the private interest factors, the court noted that (as here) there was relevant evidence in both the United States and the proposed alternative forum. The private interest factors were not in equipoise, however, because (1) the documents and witnesses not in the parties' control could not be easily summoned to the United States but the documents and witnesses in the United States (which were mainly in the possession and/or control of the defendants) could be brought to New Zealand; and (2) New Zealand was the site of a lawsuit by the foreign plaintiffs against the carrier, and these related proceedings made it "all the more clear that the private interest factors weigh in favor of dismissal." Id. at 1147.

As to the public interest factors, the court emphasized that although the United States had an interest in deterring the manufacture of defective products by domestic corporations, that interest was "slight compared to the time and resources the district court . . . would

11

expend if it were to retain jurisdiction . . . ." Id. Further, New Zealand's interest was high because (1) "[t]he crash involved a New Zealand airline carrying New Zealand passengers;" and (2) "the accident and its aftermath, including the accident investigation, the post-investigation activity, and the various legal proceedings including an ongoing criminal probe, have all received significant attention by the local media." Id.; see also Piper, 454 U.S. at 238 (reversing appellate court and affirming district court's original decision to dismiss on *forum non conveniens* grounds litigation resulting from the crash of a commercial aircraft in Scotland); Satz v. McDonnell Dourglass Corp., 244 F.3d 1279, 1281 n.1 (11th Cir. 2001) (affirming *forum non conveniens* dismissal of products liability claim brought by estates of airline disaster victims because Argentina was an adequate alternative forum and public interest factors weighed in favor of dismissal); Van Schijndel v. Boeing Co., 434 F. Supp. 2d 766 (C.D. Cal. 2006) (dismissing on *forum non conveniens* grounds product liability lawsuits stemming from a crash of a Singaporean-owned airplane in Taiwan); Cheng, 708 F.2d at 1411 (affirming *forum non conveniens* dismissal of cases stemming from the crash of a commercial airliner in Taiwan notwithstanding the presence of some American plaintiffs); Pain v. United Tech. Corp., 637 F.2d 775, 795-99 (D.C. Cir. 1980) (affirming *forum non conveniens* dismissal of litigation concerning a helicopter crash in the North Sea notwithstanding the presence of an American plaintiff).

        **b.**     ***Forum Non Conveniens* Factors**

        **i.**     **France is an Adequate, Alternative Forum**

Plaintiffs do not really contend that France is an inadequate alternative forum but assert that this Court should take into account that France's court system is slower than the court system in the United States, sometimes taking several years to conclude complex matters. Foreign Pls.' Opp'n to Defs.' Mot. to Dismiss (Dkt. 645) at 36 ("Except for serious concerns about the length of time it takes for as [sic] cases as complex as these cases to be brought to trial . . . Plaintiffs do not quarrel with the gross assertion that, in theory, France provides an adequate alternative forum for litigation of their claims.")

12

In light of the Plaintiffs' concessions, the declarations provided by Defendants' expert, and the case law, the Court concludes that France is an adequate, alternative forum. See, e.g., Dattner v. Conagra Foods, Inc., 91 Fed. Appx. 179, **2 (2d Cir. 2004) (affirming district court dismissal on *forum non conveniens* grounds following conclusion that France was an adequate alternative forum); Gschwind v. Cessna Aircraft Co., 161 F.3d 602, 606-607 (10th Cir. 1998) (France is an adequate forum).[6]

### b. The Private Interest Factors Weigh in Favor of Dismissal

The private interest factors include (1) relative ease of access to proof; (2) availability of compulsory process to secure the attendance of unwilling witnesses; (3) the cost of obtaining the attendance of willing witnesses; and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." Piper, 454 U.S. at 241 n.6 (1981); see also Lueck, 236 F.3d at 1145 (courts should consider the residence of the parties and witnesses; the forum's convenience to the litigants; access to physical evidence and other sources of proof; whether unwilling witnesses can be compelled to testify; the cost of bringing witnesses to trial; the enforceability of judgment; and all other practical problems that make trial easy, expeditious and inexpensive).

As in Lueck, the private interest factors in this case cut both ways but are not in equipoise.

On the one hand, the domestic Manufacturing Defendants are located here, and the evidence regarding whether any one or more of their products were defective is at least partly (and probably mostly) located here as well. In addition, according to the foreign Plaintiffs, the developer of the flight's fault messaging system (not a Defendant) is located in Maryland,

---

[6] Historically, some of the delay in French civil proceedings in large matters like this resulted from French courts automatically staying such proceedings pending resolution of related criminal proceedings. See generally Gschwind, 161 F.3d at 607. The presence of an ongoing criminal proceeding no longer results in an automatic stay. Tr. of Sept. 24, 2010 Proceedings (Dkt. 753) at 60.

13

1  and the twenty-four "fault messages" received shortly before the plane crashed will be
2  important in determining the cause of the crash.[7]

3  On the other hand, the official accident investigation and a criminal investigation are
4  taking place in France, and all the physical evidence that has been recovered is located there.
5  Specifically, the Bureau d'Enquetes et d'analyses ("BEA"), the French civil aviation
6  authority, is conducting the official civil investigation into the cause of the crash. French
7  civil courts, but not courts in this country, can order the BEA to disclose the underlying
8  evidence in its possession, even while that investigation is ongoing. Beraudo Decl. (Dkt.
9  141) ¶¶ 17-18; see also Section 5.12 of Annex 13 to the Convention on International Civil
10 Aviation ("The State conducting the investigation of an accident shall not make the
11 following records available for purposes other than accident or incident investigation, <u>unless
12 the appropriate authority for the administration of justice in that State</u> determines that their
13 disclosure outweighs the adverse domestic and international impact such action may have on
14 that or any future investigations.") (emphasis added). That same evidence would be
15 available in the United States, if at all, only via a request pursuant to the Hague Convention
16 or a Letter Rotgatory from this Court, and there is no guarantee that either method would
17 necessarily be successful in obtaining the evidence. Id. ¶ 23; Beraudo Supp. Decl. (Ex. 3 to

---

[7] The "black box" has not been and likely will not be recovered. The fault messages therefore <u>might</u> provide some kind of record of what went wrong on the plane. It is difficult to say at this point how important those messages will be in determining liability and to what extent, even if they are important, any documents or witnessers of non-parties <u>in the United States</u> will be helpful or necessary in establishing liability. Defendants argue persuasively that, to the extent there is any relevant information concerning the fault messages that is not already known, it is either publicly available or is in the possession of a Swiss company. Manufacturing Defs.' Reply (Dkt. 687) at 27-31. See Lueck, 236 F.3d at 1146 (quoting Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1335-36 (9th Cir. 1984) (the court should not focus on the number of witnesses or the amount of evidence in each local but on "the materiality and importance of the anticipated [evidence and] witnesses' testimony and then determine[] their accessibility and convenience to the forum.")). Even assuming Plaintiffs will need information concerning the fault messages from an American company, and based on the evidence before this Court that seems unlikely, they can obtain it even if the cases progress in France. See 28 U.S.C. § 1782(a).

14

Manufacturing Defs.' Reply (Dkt. 687) ¶ 28).[8]  Moreover, some Defendants are French companies, and their evidence is located predominantly in France as well.[9]

Thus, as in Lueck, because Defendants have agreed to provide all of their evidence in France but it will difficult to compel non-parties to produce evidence from France (or elsewhere in Europe) in the United States, the balance of the private interest factors concerning access to relevant evidence tips in favor of dismissal.  236 F.3d at 1147.  See also Vivendi S.A. v. T-Mobile USA, Inc., No. C06-1524JLR, 2008 WL 2345283, at *13 (W.D. Wash. June 5, 2008) (describing as "incredibly burdensome" the process of using the Hague Convention and letters rogatory to compel the attendance of witnesses when "Plaintiffs could bring their claim in a country where more witnesses reside and where the parties could take advantage of [the] European Commission").

Finally, the ability to bring parties together in France in a procedurally sensible fashion is another private interest factor favoring dismissal because a consolidated action in France will "make trial . . . eas[ier], [more] expeditious and [less ]expensive."  In particular, there is no dispute that, under the MC, both the foreign Plaintiffs and the Manufacturing Defendants can sue Air France in France.  Here, on the contrary, foreign Plaintiffs cannot sue Air France and there is a dispute as to whether the Manufacturing Defendants can even assert

---

[8] France is also the location of significant amounts of relevant damages evidence, and it will likely be easier in France to obtain damages evidence from the other Europeans in these lawsuits.  See European Council Regulation 1206/2001; Magnin v. Teledyne Continental Motors, 91 F.3d 1424, 1429-30 (11th Cir. 1996) ("Witnesses such as the crash investigators, eyewitnesses to the crash, the owner of the aircraft, those who maintained it, and the damage witnesses, are all in France.") (emphasis added).

[9] Plaintiffs argue that the evidence in France is simply not important to their case or to the Defendants.  Resp. in Opp'n to Mot. to Dismiss (Dkt. 645) at 48-51.  The Court finds this position implausible.  The cause of the crash is hotly disputed.  It is simply not the case that the evidence in the possession of Air France (the carrier), Airbus, S.A.S. (which, among other things, designed and manufactured the aircraft and performed all testing of it in France) and Thales, S.A. (which manufactured in France a component part that Plaintiffs allege was defective) is plainly irrelevant to determining whether the crash was caused by one or more defective products or by, for example, pilot negligence.  See Piper, 454 U.S. at 259 n.27 (access to operator's evidence is important); Lueck, 236 F.3d at 1146 (airline and aircraft records and "records regarding the qualifications of the flight crew and their employment" are relevant); Van Schijndel, 434 F. Supp. 2d at 776 ("maintenance records may well be crucial.").  Plaintiffs cannot undercut the relevance of this evidence by focusing their inquiry on the component parts manufactured in the United States.  That is especially true where, as here, the available evidence as to the cause of the crash is relatively limited and Defendants will need access to all available information regarding the parts, assembly, maintenance, and operation of the aircraft to properly defend themselves.  See Lueck, 236 F.3d at 1146 (quoting Gates Learjet Corp., 743 F.2d at 1335-36).

their contribution claims against Air France. Accordingly, France is a superior forum because actions and/or claims can be consolidated there.[10] See Piper, 454 U.S. at 241 n.6 (1981); Delta Air Lines, Inc. v. Chimet, S.P.A., --- F.3d ----, 2010 WL 3385537 at *9 (3d Cir. 2010) (a desire to pursue contribution claims against a potentially responsible third-party is relevant to a *forum non conveniens* analysis) (citation omitted).[11]

### c.     The Public Interest Factors Weigh Heavily Toward Dismissal

The public interest factors include (1) administrative difficulties flowing from court congestion; (2) local interest in having localized controversies resolved at home; (3) interest in having the trial in a forum that is familiar with the law governing the action; (4) avoidance of unnecessary problems in conflicts of law or in the application of foreign law; and (5) unfairness of burdening citizens in an unrelated forum with jury duty. Piper, 454 U.S. at 241 n.6; see also Lueck, 236 F.3d at 1147 (courts should consider the local interest in the lawsuit; the court's familiarity with governing law; the burden on local courts and juries; court congestion; and the costs of resolving a dispute unrelated to a particular forum). The public interest factors weigh toward dismissal for four primary reasons.

---

[10] Counsel for some of the foreign Plaintiffs said at oral argument that his clients would not pursue their actions in France if this case is dismissed on *forum non conveniens* grounds and would instead commence actions in Brazil. See Tr. of Sept. 24, 2010 Proceedings (Dtk. 753) at 21. Such is, of course, their prerogative. That choice does not trump the private interest factor showing that France is a superior forum to the United States for litigation arising out of the crash because all actions against the carrier can be brought there.

[11] In addition to the foregoing discussion, the Court notes the following by way of summary regarding its analysis of the private interest factors.

The residence of the parties and witnesses, the forum's general convenience to the litigants, and the cost of bringing witnesses to trial tip the scale slightly toward dismissal. France is a more physically convenient forum for the French Defendants and any European Plaintiff or witness and is equally as convenient as the United States for any Plaintiffs from South America. Among the Plaintiffs, only the representatives of the two American decedents are meaningfully inconvenienced by dismissing these actions for refiling in France. It is because of the domestic Plaintiffs' inconvenience that the Court finds that these factors tip the scale only slightly toward dismissal.

In addition, for the reasons stated above, the Court finds that access to evidence outside the parties' control (in particular, the physical evidence recovered from the crash and any non-public evidence in the possession of French authorities), the ability to compel unwilling witnesses to testify and produce evidence, and the ability to bring consolidated actions all tip the scale toward dismissal.

First, France is more interested than the United States in this litigation. An Air France flight left Brazil for France carrying a plurality of French citizens and just two Americans living abroad at the time of the crash. The American interest here, ensuring the quality of component parts on aircraft and protecting the rights of two American citizens, is real and legitimate but less significant than the French interest. See Lueck, 236 F.3d at 1147; Piper, 454 U.S. at 268 ("The incremental deterrence [against producing defective products] that would be gained if this trial were held in an American court is likely to be insignificant. The American interest in this accident is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here."). It is of course true that the plane did not crash in France, but it crashed on its way there, and the physical evidence that has been recovered is located there. When a national carrier crashes on the way home with a plurality of citizens of that nation onboard, it is difficult to conclude that the carrier's country is not the most interested nation in litigation arising from the crash. Indeed, were the tables reversed and this litigation resulted from the crash of an American airliner returning from Brazil to the United States with a plurality of American citizens onboard it is hard to imagine that the United States would not be the most interested forum even if some of the parts on the plane were manufactured in France.[12] France's interest is especially obvious here because it is also conducting the official civil investigation and an official criminal investigation.[13] See Clerides v. Boeing Co., 534 F.3d

---

[12] As counsel for some of the foreign Plaintiffs stated during oral argument, "You have the two most important powerful companies in France, the largest employer and the nation's largest carrier . . . ." involved in this litigation. See Tr. of Sept. 24, 2010 Proceedings (Dtk. 753) at 21. The involvement of these two prominent French companies underscores France's interest in this matter, as does the significant press coverage the crash has received in that country. See Lueck, 236 F.3d at 1137 (discussing country's interest in litigation resulting from an air crash and noting the "significant attention" given by the local media); In re Air Crash Near Peixoto De Azeveda, Brazil, 574 F. Supp. 2d 272 (E.D.N.Y. 2008) (discussing media coverage as relevant factor demonstrating country's interest in litigation resulting from an air crash that killed 154 passengers and crew).

[13] Foreign Plaintiffs point out that France is not conducting the official investigation because of a prior determination that it is the most interested nation but rather because of the rules about where such investigations take place when a plane crashes in international waters. But this does not render the location of the official investigation irrelevant. First, the rules about where the official investigation should take place presumably incorporate some notion of which nation is likely to be the most interested. Second, regardless of the reason the official investigation is taking place in France, the fact

17

623, 630 (7th Cir. 2008) ("Greece and Cyprus have demonstrated interest in the case through their respective criminal investigations into the crash and through Greece's official investigation of the crash."). France is certainly more interested than the country from which only two passengers were citizens and in which only some of the allegedly defective component parts were made.

Second, France is the superior forum for this litigation because there, unlike here, the foreign Plaintiffs (who make up the overwhelming majority of those who have filed suit here) can sue Air France directly. This avoids potential tension with the MC created by the Manufacturing Defendants' attempts to sue Air France as a third-party Defendant in the foreign Plaintiffs' actions.[14] That tension exists regardless of whether the Manufacturing Defendants' third-party claims are barred by the MC.

If Air France can be sued by the Manufacturing Defendants as a third-party Defendant it creates tension with the MC in two ways. First, Air France, though a party, would not be presumptively liable to the Plaintiffs as contemplated by the MC.

> [The] "carrier is liable for damages sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft.";
>
> [The burden is on the carrier to prove] "(1) the damage was not due to the negligence or other wrongful act or omission of the carrier or its servants or agents, or (2) such damage was solely due to the negligence or other wrongful act or omission of a third party."

MC Art. 17(1), 21(2)(a)-(b). Second, Air France's presence as a third-party Defendant would undercut the MC's jurisdictional restrictions because Air France will end up indirectly litigating the passengers' claims outside one of the five forums expressly provided for in the MC.

---

that it is taking place there makes France interested.

[14] Foreign plaintiffs cannot sue Air France in the United States because the United States is not one of the five jurisdictions available to such plaintiffs under the MC. As discussed above, the Manufacturing Defendants have filed cross claims against Air France in the foreign Plaintiffs' lawsuits, and Air France has moved to dismiss those claims on jurisdictional grounds.

18

If, on the other hand, Air France cannot be sued as a third-party Defendant, then the Manufacturing Defendants will be unable to seek indemnification in the same action in which they are being sued by the foreign Plaintiffs. That would result in exactly the type of oppressive and vexatious outcome that *forum non conveniens* dismissal is designed to avoid. Piper, 454 U.S. at 267 ("[T]he inability to implead potential third-party defendants" can be a factor weighing in favor of dismissal in a *forum non conveniens* analysis); See Delta Air Lines, Inc., --- F.3d ----, 2010 WL 3385537 at *9.

Third, dismissal to France also avoids the prospect of courts in the United States having to apply French law. Although this Court need not definitively determine which law will apply to these actions before dismissing on *forum non conveniens* grounds, see Loya v. Starwood Hotels & Resorts Worldwide, Inc., 583 F.3d 656, 662 (9th Cir. 2009) (citing Lueck, 236 F.3d at 1148), the possibility that French law will apply is an additional factor favoring dismissal. Proyectos Orchimex de Costa Rica, S.A. v. E.I. du Pont de Nemours & Co., 896 F. Supp. 1197, 1204 (M.D. Fla. 1995) ("Without deciding the choice of law issue, the court finds that the possibility that foreign law will apply weighs strongly in favor of dismissal.").

Finally, although these cases are consolidated for pre-trial purposes (thereby reducing somewhat the burden on the federal judiciary in addressing these matters), the burden on this Court, other district courts after pre-trial proceedings are concluded, and potential juries charged with resolving these matters would be significant. Given the comparatively limited interest that the United States has in resolving litigation stemming from the crash, the Court finds that the burden on the judiciary and potential jurors if these matters were kept here is another public interest factor favoring dismissal. See Lueck, 236 F.3d at 1147; Vivendi SA, 586 F.3d at 696 ("The burden on local courts and juries unconnected to the case and the costs of resolving a dispute unrelated to the forum also favor dismissal.").

\* \* \* \* \*

Toward the end of the oral argument on these Motions, counsel for many of the foreign Plaintiffs candidly acknowledged that the foreign Plaintiffs are forum shopping (and

19

he asserted that Defendants are doing the same). Tr. of Sept. 24, 2010 Proceedings (Dtk. 753) at 57-58. This acknowledgment – a reflection of the simple reality – succinctly explains why the foreign Plaintiffs' forum choice is not entitled to much deference. Although it is true that the domestic Plaintiffs' forum choice is entitled to considerably more deference, and the Court is sensitive to the importance of making courts in this country available to American citizens, that deference does not and cannot prevent this Court from dismissing on *forum non conveniens* grounds where, as here, an adequate alternative forum is available and superior.

## V.   CONCLUSION

For the foregoing reasons, Air France's Rule 12(b)(1) Motion to dismiss the domestic Plaintiffs on jurisdictional grounds (Dkt. 156) is DENIED. Defendants' Motions to Dismiss for *Forum Non Conveniens* (Dtks. 159 and 140) are GRANTED. Air France's Motion to Dismiss the Manufacturing Defendants' third-party claims (Dkt. 609) is DENIED as moot. As a condition of this Order, Defendants shall make themselves amenable to suit in France and abide by all stipulations made in their Motions and at oral argument. See Tr. of Sept. 24, 2010 Proceedings (Dtk. 753) at 4-8. As an additional condition of dismissal, Defendants shall not seek or argue for a stay of any civil proceedings commenced in France.

**IT IS SO ORDERED.**

Dated: October 4, 2010

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2010\2144\Order granting forum non conveniens dismissal.wpd      20